*95
Curia, per

Harper, Ch.
The only case relied on, which seems tosustain the appeal, is that of Lester vs. Bossard, (2 McC. Ch. 419.) in which it was determined that, after an order to account and report made, the complainant might, at pleasure, dismiss his bill, upon payment of costs. But we are compelled to cofaclude that the determination in that case is opposed to the current of authorities, as well as to justice and convenience. In Meddron Bruce vs. DuBose, (2 Hill Ch. 375,) the authority of Lester vs. Bossard was, in some degree, shaken, and it was supposed to depend on its peculiar circumstances. The case of Lashley vs. Hogg, (11 Ves. 602,) was referred to, in which, after a decree to account, with the usual advertisement for creditors, Lord Eldon refused leave to dismiss the bill upon payment of costs, even with consent of parties. The creditors being made parties, by being called before the court, had an interest in the decree, of which the original parties could not deprive them. In Gilbert vs. Faules, (2 Freem. 158,) at the hearing of the cause, it was decreed to account, and the account was stated by the master. The' plaintiff moved to dismiss his bill upon payment of costs, and it was urged that quilibet potest renuntiare juri pro se intro-ducto. The Master of the Rolls directed the matter to be moved before the Lord Chancellor; by whom the motion was denied; “and the Lord Chancellor and Judge Brown, in 17 Car. 2, between Cheatly Sf Paddington, gave the same rule- in' the like case.”
The case of Carrington vs. Holly, (Dick. 280,) seems ter have a bearing on the principle. Upon the hearing, an issue was directed, and the plaintiff moved to dismiss the bill, upon payment of costs. This motion was granted; Lord Hardwick saying that the plaintiff might dismiss his bill' at any time, though it would have been otherwise if there had been a decree. “ So, likewise,” said his lordship, “ if the issue had been tried and a verdict in favor of the defendant y *96 though defendant might have set the cause down on thd equity reserved, in order to have the bill dismissed upon the solemn judgment of the court, so as to make the order of dis-mission pleadable.” This last dictum is said by Maddock, in his Treatise of Equity, 2 vol. p. 390, not to be warranted by the Register’s book; but, in Gartside vs. Irlierwood, (Dick. 612,) Lord Hardwicke is made to refer to the case of Car-rington vs. Holly, and to repeat his former opinion. An issue is to satisfy the conscience of the court, and the verdict is certainly no decree; yet it is a determination of the rights of the parties, on the benefit of Which the defendant has a right to insist.
But, in Rossard Sf Lester, the rule is stated to be, that the plaintiff is entitled to dismiss his bill at any time before a decree fixing the rights of the parties. It is evidently assumed that the decree to account, of order of reference, is not such a decree. This is plainly a mere misapprehension. That it is not Such a final decree as to entitle it to the lien or priority of a judgment at law, is very well settled. Such was the determination (in Morris vs. The Bank of England, Ca. temp. Talb. 217,) that a mere decree for an account of the demand of the plaintiff" and of the personal estate come into the hands of the defendant, with direction for the payment of the result of that account, is not a decree to prevent an executor confessing or paying a judgment. In Perry vs. Phillips, (10 Ves. 34,) by the decree, accounts were directed, and it was ordered that what should be found due should be answered by the defendant. It was contended that this last order made it a final decree ; but it was held to be only the ordinary decree quod com-putet, and notfinal to prevent the executors confessing or paying. As to the decree quod computet,■ see the numerous cases referred to, 2 Chit. Eq. dig. Til .practice, xxxiv, 4.
When there is a decree to account, each party becomes an actor, entitled to prosecute his suit to effect and to recover *97 what shall be found. As is said in Stowell vs. Cole, (2 Vern. 297,) where there is a bill for a mutual account, the plaintiff must pay the balance, if found against him. In Smith vs. Eyer, (2 Atk. 385,) Lord Hardwicke says that the decree quod com-putet always concludes in the same manner, and is not varied. Though the words are inserted, that each party do pay; when the order is made absolute the money is to be paid to the person reported to be entitled. Such is our own daily and familiar practice.
If the right to an account should be denied, and that question be heard and solemnly determined, and an account be directed in consequence, could it be said that this was not a decree fixing the rights of the parties ? Can it be less so because the account was directed upon the defendant’s own submission 1 It is probable that, according to the English practice, the decree, quod computet, is entered in a more formal manner than with us. I gather from Smith, Eq. Pr., 2 vol. 96, that, after the decree to account entered, an order is made to refer to a particular master. But the order to account, or order of reference is, in substance and effect, this decree. A question might, perhaps, be made, when, by the order, the equities are reserved, and the right to an account may be contested even after the coming in of the report. But such is not the present case or that of Lester vs. Bossard.
Reluctant as we are to depart from a decision once made, and high as is the authority of the eminent Judge who delivered the opinion in the case of Lester vs. Bossard, yet we must call to mind that the court, at that time, was new to the Equity practice, and decided from analogy to the practice of Law. Though injustice may be done at law, by permitting a plaintiff to submit to a nonsuit after notice of discount filed, jet the rule had existed immemorially, and courts would not innovate upon it, in order to remedy the evil, when the law of set off was introduced. But, certainly, this affords no reason *98 why we should innovate upon the established practice of Equity, in order to produce a similar injustice. This is.not one of the decisions on the faith of which rights may have been vested, or acquiesced in, which might be shaken by its reversal; but, certainly, it would continue to work injustice, that, after a defendant has been put to establish his demand, at great expense of time and labor, and of money too, which posts will not reimburse, he should be disappointed of the fruit of his exertions at the arbitrary will of another. In the case before us, if the defendant were now put to bring a separate suit, a question might be made, whether he could be barred by the Statute of Limitatations.
Graham, for the motion.
The decision of the Chancellor is affirmed.
Johnston, Dunkin, and Johnson, Ch., concurred.